**William D. MOORE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F-90-471.

Court of Criminal Appeals of Oklahoma.

July 25, 1995.

Lynn Nolen, Muskogee, Defense Counsel, at trial.

W.A. "Drew" Edmondson, Dist. Atty., Muskogee, Pros., at trial.

Patricia A. Kirch, Oklahoma City, for appellant on appeal.

Susan B. Loving, Atty. Gen., Patrick T. Crawley, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

LANE, Judge:

Today we decide an issue of first impression: that Title 22 O.S.1981, § 654, which grants both sides in a criminal trial peremptory challenges "for which no reason need be given" does not violate the due process principles of the Oklahoma Constitution found in Article II, sections 7 and 20, or the Equal Protection Clause of the federal constitution.

William D. Moore, appellant, was convicted by jury of First Degree Burglary, and Assault and Battery with a Dangerous Weapon, both After Former Conviction of Two Felonies, in Muskogee County District Court, Case No. CRF–89–211. The jury recommended punishment at twenty (20) years imprisonment for each count, and the trial court sentenced accordingly.

On appeal this case was assigned to Panel No. 17 of the Emergency Appellate Division. *See* Rule 12.1 *et. seq., Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1993, Ch. 18, App. The Panel reversed judgment and sentence after finding the strikes of two African–American venireman to be racially motivated. *Sua sponte,* the Panel also found the peremptory challenge statute, 22 O.S.1981, § 654, violative of the due process principles of the Oklahoma Constitution. *See* Okla. Const. art. II, §§ 7 and 20. Due to the far reaching ramifications of declaring the peremptory challenge statute unconstitutional, we decided *sua sponte* to review this case, and called for supplemental briefs from both parties. *See* Rule 12.10(B)(1), *Rules of the Court of Criminal Appeals,* 22 O.S.Supp. 1993, Ch. 18, App. We reverse the opinion below, affirm the Judgment and Sentence, and find 22 O.S.1981, § 654 to be constitutional.

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny hold the Equal Protection Clause of the Fourteenth Amendment prohibits peremptory strikes solely on the basis of race and gender. *See J.E.B. v. Alabama ex rel. T.B.,* — U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In reversing, the Panel applied *Batson* to a strike for cause, and to a peremptory strike which was not based solely on race. This mis-application of *Batson* warrants reversal of the Panel's decision.

■ The first strike addressed by the Panel was a strike for cause against an African–American woman who worked as a youth guidance officer. She was struck after she stated she would rather not sit on the jury, for her experience led her to believe the defendant was guilty. A majority of the Panel found this black woman had been challenged excessively or improperly during voir dire. We disagree. The prosecutor questioned this woman and a white male youth guidance worker skillfully and appropriately. We find no evidence at all of racial animus here. Therefore we need not address wheth-

er *Batson* may be extended to strikes for cause, or whether the issue is waived for failure to object to the strike at trial. *See Black v. State,* 871 P.2d 35 (Okl.Cr.1994).

The second strike cited by the Panel was a peremptory strike of a young African–American man. In response to a question by the prosecutor, this venireman said he would not convict on the basis of the victim's testimony alone. He was asked nothing more, and was struck from the jury panel. In response to the same question, an older white male venireman said:

> "I'd probably find it hard to take any one person's belief alone. You know, there's always two sides to most any story. And in this case we have two sides to an alleged story."

This venireman was rehabilitated and retained, even though his final response to this line of questions was, "If she convinced me." The prosecutor's only peremptory strike was used to remove the black venireman. The Panel found this strike to be racially motivated for the black and white veniremen were treated differently after similar responses.

■ Accepting for the moment this may be evidence of a *Batson* violation, we must determine whether this issue is preserved for our review. *See Id.* The procedural facts are unusual, for the prosecutor requested a *Batson* hearing even though the defense did not object to the strike. In the ordinary course of events, a hearing is required only after the party opposing a peremptory strike makes a prima facie showing of race or sex discrimination. *J.E.B. v. Alabama ex rel. T.B.,* — U.S. at ——, 114 S.Ct. at 1429; *Batson v. Kentucky,* 476 U.S. at 97, 106 S.Ct. at 1723. In the present case the prosecutor waived the requirement of the opposition's prima facie case and triggered the hearing himself. We find nothing in *Batson* forbidding a striking party from presuming a prima facie case had been made, and offering neutral reasons to rebut it. Once neutral reasons are offered, the trial court must rule on them.

■ The prosecutor gave three reasons for the strike: (1) the venireman's youth, (2) his service on another jury panel earlier dur-

ing the docket which resulted in an acquittal, and (3) his statement that he could not convict on the victim's testimony alone. The trial court found the prosecutor's neutral reasons sufficient to rebut the prima facie case.

■ The appellate court is to treat this finding of fact with "great deference." *Batson v. Kentucky,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. The Emergency Appellate Panel found the proffered reasons unpersuasive and mere pretext for intentional race discrimination. We disagree. The fact the struck venireman had recently served on an acquitting jury is a valid, racially neutral reason for the prosecutor's peremptory strike. Giving great deference to the trial court's finding of fact, we find nothing in the record to suggest the prosecutor's articulated reason is merely pretext for racial discrimination.

We turn now to 22 O.S.1981, § 654 and determine whether it offends the due process principles of the Oklahoma Constitution. Simply put, the question before us is whether the peremptory challenge denies the criminal defendant a fair trial. Section 654 provides:

> A peremptory challenge may be taken by either party, and may be oral. It is an objection to a juror for which no reason need be given, but upon which the court must excuse him.

The Panel expressed deeply felt frustration with the "empty remedy" of *Batson, Powers* and *McCollum,* and concluded the only way to eliminate unconstitutional discrimination from the selection of the jury panel is to eliminate the peremptory challenge. In this respect the Panel, comprised of trial judges who face this issue regularly in their courtrooms, could not agree with the Supreme Court conclusion articulated in *Batson:*

> Nor do we think that this historic trial practice [the peremptory challenge], which long has served the selection of an impartial jury, should be abolished because of an apprehension that prosecutors and trial judges will not perform conscientiously their respective duties under the Constitution.

*Batson*, 476 U.S. at 99 n. 22, 106 S.Ct. at 1724 n. 22.

Recognizing the Supreme Court had foreclosed its use of the federal constitution to abolish the peremptory challenge, the Panel turned to the due process principles guaranteed to state criminal defendants by the Oklahoma Constitution Article II, sections 7 and 20:

> No person shall be deprived of life, liberty, or property, without due process of law ... (Section 7);
>
> In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury ... (Section 20)

■ The constitutional right to due process guarantees that every person charged with a crime will have a fair and impartial trial according to established law. *Polk v. State*, 26 Okl.Cr. 283, 224 P. 194 (1924); *Brown v. State*, 39 Okl.Cr. 406, 266 P. 476 (1928). Generally speaking, due process encompasses "those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses". *Application of Fowler*, 356 P.2d 770, 778 (Okl.Cr.1960). Thus, the historical irony of the Panel's holding is profound, for the peremptory challenge has been recognized in Anglo–American jurisprudence for over 700 years as a tool to ensure to all criminal defendants a fair jury. *See Swain v. Alabama*, 380 U.S. 202, 213, 85 S.Ct. 824, 832, 13 L.Ed.2d 759 (1965) (and cases cited therein). This tool has always been a part of Oklahoma criminal trial practice, for it was introduced seventeen years prior to statehood by the first Territorial Legislature for the Oklahoma Territory. 1890 Okla.Sess.Laws §§ 5611, 5613–5615. Unimpressed with this ancient pedigree, the Panel concluded the peremptory challenge today is inherently unfair, as it is now a tool of racial discrimination.

■ To determine whether Section 654 violates the due process principles of the state constitution we examine its application, as well as the statute on its face. The statute as applied does not trouble us. We believe the peremptory challenge is not used as a tool for unconstitutional discrimination on the basis of race or sex, for the universal statewide practice follows the dictates of *Batson* and its progeny. This is not to say the peremptory challenge has never been used to discriminate against jurors on the basis of their race or sex. However, as currently applied, we are confidant in the ability of the trial bench across this state to manage this aspect of the criminal trial. When the trial bench properly assumes its active role in the *Batson in camera* hearing, and makes findings on the record as to the sufficiency of the proffered neutral justification for peremptory strikes, not only will the likelihood of abuse diminish, the trial court will create an appellate record useful to this Court.

We next determine whether Section 654, on its face, violates the due process principles of the state constitution. When we read the statute together with sections 7 and 20 of the state constitution, we find there is simply nothing in the plain language of the statute which runs afoul of the plain constitutional language granting criminal defendants the right to due process. *Compare* 22 O.S.1981, § 654 and Okla. Const. art. II, §§ 7 and 20.

This result is not surprising. The Supreme Court has declined to use the Due Process Clause of the federal constitution in addressing the peremptory challenge, and we find these principles in the state constitution to be equally unsuited to the task. *See Trevino v. Texas*, 503 U.S. 562, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992). The more difficult question is whether Section 654, which requires no reason for peremptory challenge, offends the Equal Protection Clause of the federal constitution.

■ We will, as we must, interpret this statute with the commands of the Equal Protection Clause firmly in mind. And while words may be strained in the candid service of upholding constitutionality, *Ullmann v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), we will not stretch them to the point of "disingenuous evasion". *See George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379, 53 S.Ct. 620, 622, 77 L.Ed. 1265 (1933). To resolve this issue we look not only to the words of the statute, but more importantly, we read into the statute the well

understood and uniformly applied practice which has developed through judicial construction in this state. *See Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 n. 11, 108 S.Ct. 2138, 2151 n. 11, 100 L.Ed.2d 771 (1988).

■ The text of Section 654 states:

A peremptory challenge may be taken by either party, and may be oral. It is an objection to a juror for which no reason need be given, but upon which the court must excuse him.

22 O.S.1981, § 654. While this language is susceptible to an interpretation which runs afoul of the Equal Protection Clause, the plain language of this section has been modified by both judicial construction and legal practice. In fact, a race and gender neutral reason must be given by the striking party if challenged by the opponent, and it is left to the discretion of the trial court as the finder of fact to accept or reject the strike. *See e.g. Carter v. State*, 879 P.2d 1234 (Okl.Cr.1994); *Allen v. State*, 871 P.2d 79 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1995); *Green v. State*, 862 P.2d 1271 (Okl.Cr.1993); *Romano v. State*, 847 P.2d 368 (Okl.Cr.1993), *aff'd*, —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1993); *Fisher v. State*, 845 P.2d 1272 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1992); *Litteer v. State*, 783 P.2d 971 (Okl.Cr.1989). As the use of the so-called *Batson* hearing is universal in this jurisdiction following an equal protection challenge to peremptory strikes, we find Section 654 withstands the equal protection challenge, and is constitutional on its face.

In his original appeal the appellant raised two propositions of error: (1) that the trial court erred in refusing to suppress the in-court identification by the victim which was influenced by a suggestive lineup; and (2) that prosecutorial misconduct during voir dire violated the appellant's right to an impartial jury panel. We address these propositions of error now.

■ The defendant was forced to appear in the lineup in white jail coveralls. The four other men in the lineup, all of whom were also being held at the Muskogee County Jail, were told to change into street clothes for the lineup. This is error under *Thompson v. State*, 438 P.2d 287, 289 (Okl.Cr.1968), which provides a suspect should not be clothed in such a way as to stand out from the other persons in the lineup.

■ A tainted out of court identification will not necessitate exclusion of an in-court identification, however, if the in-court identification of the appellant has sufficient indicia of reliability to warrant admission. *Nave v. State*, 808 P.2d 991, 993 (Okl.Cr. 1991). The post-taint, in-court identification is admissible only if it is supported by clear and convincing evidence that it is based on the witness' independent observations at the time of the crime. *Leigh v. State*, 587 P.2d 1379 (Okl.Cr.1978). Five factors are to be considered in determining whether the in-court identification is independently reliable: (1) the witness' opportunity to observe the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the perpetrator; (4) the witness' degree of certainty at the confrontation; and (5) the time between the crime and the confrontation. *Berry v. State*, 834 P.2d 1002 (Okl.Cr.1992); *Nave v. State*, 808 P.2d at 993.

■ The facts surrounding the victim's observation of the perpetrator are these. The victim testified she was in her bedroom and her home was dark when she heard a noise in the hall. She walked into the hall and turned on the hall light. The perpetrator was 3–4 feet in front of her. She looked directly into his face for several seconds until one of them turned off the hall light.

When we apply these facts to the test for independent reliability, we find each factor is satisfied. The witness had sufficient opportunity to view the perpetrator, and her attention was riveted on his face. Her description of him as a slim, young black male a little taller than herself is accurate. She was certain in her identification; and the six months elapsed time between the crime and the in-court identification is not so long as to make the identification unreliable. The in-court identification was properly admitted for it was supported by clear and convincing evi-

dence showing reliability, and there did not exist a great likelihood of irreparable misidentification. See, *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

Appellant's second proposition of error alleges the prosecutor attempted to predetermine the verdict during voir dire questioning. No contemporaneous objection was made. While it is now axiomatic that the appellant has thus waived all but plain error, we do not reach the issue of degree of error, for we find no error at all. The questions cited do not commit the jurors to a verdict.

In summary, we reverse the opinion below; affirm the Judgment and Sentence of the trial court; and hold 22 O.S.1981, § 654 is constitutional.

JOHNSON, P.J., CHAPEL, V.P.J., and STRUBHAR, J., concur.

LUMPKIN, J., specially concurs.

LUMPKIN, Judge, specially concurring.

I join in the Court's decision which holds 22 O.S.1981, § 654 is constitutional. The scope and definition of due process has always challenged courts at all levels. Recently, this Court set out the historical analysis of the definition of "due process". See *Cooper v. State,* 889 P.2d 293, 300–302 (Okl.Cr.1995). That same analysis is utilized to address the due process issues presented in this case.

Peremptory challenges have been observed since territorial days. See St.1890, § 5613: St.1893, § 5178; Laws 1895, p. 200; St.1903, § 5467. When the first set of statutes was compiled, the peremptory challenge was a part of the system. See Laws 1908, § 3520. Indeed, it has "very old credentials," *Swain v. Alabama,* 380 U.S. 202, 213, 85 S.Ct. 824, 832, 13 L.Ed.2d 759 (1965), going back at least to the fifteenth century in the Common Law. See *Id.,* 380 U.S. at 213 & n. 10, 85 S.Ct. at 832 & n. 10. Clearly, then, it has been the "law of the land" in that it has been a part of the rules and forms established for public trials. And while this is in itself not definitive, its well-established existence for over one hundred years in this territory/state and several centuries elsewhere is a strong indication it is part of the process that is due

a criminal defendant. See *Schad v. Arizona,* 501 U.S. 624, 637, 111 S.Ct. 2491, 2499–500, 115 L.Ed.2d 555 (1991) (plurality) ("In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing [the particular statutory provision]."); *see also Id.,* 501 U.S. at 650, 111 S.Ct. at 2507 (Scalia, J., concurring in the judgment) ("It is precisely the historical practices that *define* what is 'due.' 'Fundamental fairness' analysis may appropriately be applied to *departures* from traditional American conceptions of due process; but when judges test their individual notions of 'fairness' against an American tradition that is deep and broad and continuing, it is not the tradition that is on trial, but the judges.") In fact, the Supreme Court once observed the challenge, even though not constitutionally required, is regarded as "one of the most important of the rights secured to the accused." *Swain,* 380 U.S. at 219, 85 S.Ct. at 835.

Additionally, since both sides have the same rights and limitations under the peremptory challenge, it is applied alike to both sides, in a non-arbitrary manner. See 22 O.S.1981, § 655; *Georgia v. McCollum,* 505 U.S. 42, ———————, 112 S.Ct. 2348, 2358–59, 120 L.Ed.2d 33, 51 (1992) (holding the prosecution in a criminal trial also has a right to make a *Batson* challenge during jury selection). This point was just flat overlooked by the panel. And obviously, the limitations of *Batson* itself preclude the challenge from being used in a way that discriminates against either a defendant or a venire member. Therefore, a defendant cannot claim the use of peremptories *per se* deprives him of his right to due process or a fair and impartial jury.

In her separate opinion, Judge Penny Howard correctly observed the Supreme Court has only prohibited use of the challenge in an unconstitutional manner. "Our state and federal constitutions do not compel us to strike down a portion of our judicial heritage originating in English common law. It compels us to meticulously guard against

discriminatory voir dire practices." *Id.* at 6. She also correctly observed elimination of racial discrimination will not occur by eliminating the peremptory challenge; rather, "elimination of racial discrimination will occur from conscientious trial judges scrupulously guarding against discriminating conduct by prosecutors and defense attorneys." *Id.* at 7. This is an accurate analysis of the law and the important role of the trial judge in our judicial system.

I therefore concur in the Court's determination the panel erred in holding the peremptory challenge unconstitutional. I also concur in the Court's decision to affirm the judgment and sentence.