Steven Keith HATCH, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. PC–96–718.

Court of Criminal Appeals of Oklahoma.

Aug. 6, 1996.

As Corrected Nov. 26, 1996.

Randy A. Bauman, Deputy Division Chief, Capital Post–Conviction, Oklahoma Indigent Defense System, Norman, for petitioner.

W.A. Drew Edmondson, Attorney General of Oklahoma and Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals, Oklahoma City, for respondent.

## *OPINION DENYING POST–CONVICTION RELIEF, STAY OF EXECUTION, AND REQUESTS FOR DISCOVERY AND EVIDENTIARY HEARING.*

LUMPKIN, Judge:

Petitioner has filed with this Court an Application for Post–Conviction Relief, Request for Stay of Execution, Request for Counsel, and Request for Discovery and Evidentiary Hearing. Having fully reviewed Petitioner's claims, we find Petitioner's request for counsel moot due to the appointment of the Oklahoma Indigent Defender by the District Court of Canadian County and the remaining issues are without merit.

### *PROCEDURAL HISTORY OF CASE*

Petitioner was convicted of two counts of First Degree Murder and two counts of Shooting with Intent to Kill in the District Court of Canadian County. Petitioner waived his right to a jury trial and the case was tried to the Honorable Floyd Martin, District Judge, in April, 1980. After hearing second stage evidence, the trial court found the existence of three aggravating circumstances: (1) that the murders were especially heinous, atrocious or cruel; (2) that the murders were committed to avoid lawful arrest or prosecution; and (3) that there existed a probability that the defendant would commit future acts of criminal violence as to constitute a continuing threat to society. Petitioner was sentenced to death.

On direct appeal of these convictions, this Court affirmed the convictions but remanded the death penalty sentences back to the District Court for findings in accordance with *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1992). *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983), *cert. denied* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986) (*Hatch I* ).

On remand to the District Court of Canadian County, proceedings were held before the Honorable Stan Chatman, due to the death of Judge Martin. Judge Chatman resentenced Petitioner to death. On appeal of that proceeding, the Court of Criminal Appeals upheld the death sentence. *Hatch v. State,* 701 P.2d 1039 (Okl.Cr.1985), *cert. denied* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986) (*Hatch II* ).

Petitioner next filed a Petition for Writ of Habeas Corpus in the Western District of Oklahoma, which was denied on July 24, 1985. On appeal of that denial, the United States Court of Appeals for the Tenth Circuit stayed the proceedings on April 22, 1986, pending resolution of certain claims in state court.

On January 26, 1987, Petitioner filed an Application for Post–Conviction Relief in the District Court of Canadian County, alleging among other things, that Judge Chatman should have recused from presiding over the *Enmund* hearing. The Application for Post–Conviction Relief was heard before the Honorable Joe Cannon, District Judge. Judge Cannon denied the Application in all respects except that he found that Judge Chatman should have recused and granted a new *Enmund* hearing.

In February 1987, Petitioner appealed to the Court of Criminal Appeals that portion of Judge Cannon's order which denied him post-conviction relief. On March 6, 1987, this

Court affirmed the denial of post-conviction relief in an unpublished order.

On March 30, 1987, Judge Cannon held a new *Enmund* hearing. At the conclusion of that hearing, Judge Cannon again sentenced Petitioner to death. Petitioner appealed the death sentence to this Court. This Court affirmed the death sentence. *Hatch v. State,* 835 P.2d 880 (Okl.Cr.1992) (*Hatch III* ).

The matter was subsequently remanded back to the Western District for consideration. The Honorable Ralph Thompson, Chief Judge, denied the Petition for Writ of Habeas Corpus on January 24, 1994.

Petitioner appealed that denial to the Tenth Circuit Court of Appeals. The denial of habeas relief was affirmed. *Hatch v. Oklahoma,* 58 F.3d 1447 (10th Cir.1995). Petitioner's Petition for Rehearing and Suggestion for Rehearing En Banc was denied.

Petitioner sought review from the United States Supreme Court. On June 3, 1996, that court declined to hear the case. *Hatch v. Oklahoma,* — U.S. —, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996). Because all state and federal appeals have been exhausted, this Court set an execution date of August 9, 1996.

### STANDARD OF REVIEW

This Court's consideration of claims on post-conviction is strictly limited by the provisions of the Uniform Post–Conviction Procedure Act. 22 O.S.1991, § 1080 *et seq.* On November 1, 1995, the Oklahoma Legislature amended this provision. 22 O.S.Supp.1995, § 1089. The new provision provides for filing of an original application for post-conviction relief directly with this Court, instead of the District Court where the case was tried.

Under 22 O.S.Supp.1995, § 1089(C) the only issues that may be raised in an application for post-conviction relief are those that were not and could not have been raised in a direct appeal; and those that support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent. The failure of a defendant to meet either of these two requirements prevents this Court from considering the issue on post-conviction.

Additional requirements are placed on successive post-conviction applications. This Court may not consider the merits of or grant relief based on a subsequent application for post-conviction relief unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented in a previously considered application filed under this section, because the factual or legal basis for the claim was unavailable.

Section (D)(9) provides that a legal basis of a claim is unavailable if it was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction; or is a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state and had not been announced on or before that date.

A factual basis of a claim is unavailable on or before a date described by this subsection if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

As Petitioner's application was filed after November 1, 1995, it will be reviewed under the new provisions.

### GROUNDS FOR RELIEF

In his Revised Application for Post–Conviction Relief filed July 19, 1996 [1], Petitioner raises four grounds for relief: 1) that Petitioner was never determined competent to stand trial under constitutional standards; 2) that Petitioner was deprived of the right not to be tried, convicted and sentenced to death by a court that had no subject matter juris-

---

1. On June 14, 1996, Petitioner filed an Application for Post–Conviction Relief, Request for Stay, Request for Counsel, and Request for Discovery and Evidentiary Hearing. This pleading was filed *pro se,* with the assistance of an inmate legal assistant. This pleading was not properly before the Court at the time. In that application, Petitioner presented four grounds for relief, grounds I.B. and II listed herein and two grounds addressed in the third ground for relief discussed herein.

diction over him; 3) that Petitioner was deprived of effective assistance of counsel; and 4) that an evidentiary hearing is necessary to resolve the issues raised herein.

Petitioner has also presented a preliminary complaint, that the new capital post-conviction procedure, on its face and as applied, denies both adequate and equal access to the courts and deprives Petitioner of due process, all in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Ex Post Facto Clause of that document, and similar provisions of the Oklahoma Constitution. As the constitutionality of the statute impacts on this Court's ability to address Petitioner's grounds for relief, we shall address that first.

### I.A.

■ We begin our analysis with the precept that state laws are generally entitled to a presumption of validity against attack under the equal protection clause. *Tyler v. State*, 777 P.2d 1352, 1354 (Okl.Cr.1989) (citing *Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979)). *See also State v. Ballard*, 868 P.2d 738, 740 (Okl. Cr.1994); *Callaway v. City of Edmond*, 791 P.2d 104, 106 (Okl.Cr.1990); *State v. Hunter*, 787 P.2d 864, 865 (Okl.Cr.1990). Legislatures have a wide range of discretion when passing laws which have the effect of treating some differently from others. *Tyler*, 777 P.2d at 1354.

■ To show an equal protection violation Petitioner must show that 22 O.S.Supp.1995, § 1089 "impermissibly interferes with his exercise of a fundamental right or operates to the peculiar disadvantage of him as a member of a suspect class." *Clayton v. State*, 892 P.2d 646, 654 (Okl.Cr.1995). If a petitioner fails to make that showing (which requires application of the strict scrutiny standard, *see Crawford v. State*, 881 P.2d 88, 90 (Okl. Cr.1994)), he must prove that the statute is not rationally related to a legitimate state interest, also called the "rational relationship test." *Id.*

As we said in *Clayton*, "Petitioner fails to cite any authority, nor does our research disclose any, which holds capital post convic-

tion petitioners constitute a suspect class." *Id.* at 654. We find the same rationale applies here.

We likewise held in *Clayton* while analyzing the previous version of Section 1089, that the section did not impermissibly interfere with a fundamental right. *Id.* This is true because a petitioner does not have a fundamental right to post-conviction review. *Id.* (citing *Manous v. State*, 797 P.2d 1005 (Okl. Cr.1990)). *See also Murray v. Giarratano*, 492 U.S. 1, 10, 109 S.Ct. 2765, 2770, 106 L.Ed.2d 1 (1989) ("State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal."); *Id.* at 13, 109 S.Ct. at 2772 (O'Connor, J. concurring) ("Nothing in the Constitution requires the States to provide [post-conviction] proceedings [citation omitted], nor does it seem to me that the Constitution requires the States to follow any particular federal model in those proceedings.").

■ Having failed to prove a violation of a fundamental right or the existence of a suspect classification, Petitioner must prove there is no rational basis for the provisions of the statute if he is to succeed in his argument. Under this approach, a legislative classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Crawford*, 881 P.2d at 90. Under this test, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Id.* Also under this test, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.* at 91. As we said in *May v. State*, 788 P.2d 408 (Okl.Cr.1990):

... Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some group of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the

achievement of the State's objective, State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . .

*Id.* at 411 (quoting *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)).[2]

A collateral proceeding such as the post-conviction relief proceeding outlined in Section 1089 is not intended to be a second appeal; rather, it is intended to give a convicted death row inmate an opportunity to raise issues which were not and could not have been raised during direct appeal. 22 O.S.Supp.1995, § 1089(C)(1). Further, a death row inmate seeking post-conviction relief has received the benefit of a direct appeal and this Court has conducted a mandatory sentence review. 22 O.S.Supp.1995, § 1089(A); 21 O.S.1991, § 701.13. The fact that the inmate has been denied relief at that level shows most grounds alleged to require reversal—including grounds which are technical, as opposed to showing actual innocence—have been examined and found to be without merit. Logic dictates the scope of viable issues in a post-conviction application is narrower, as it would be a waste of State resources to address issues which either have already been adjudicated or which cannot be addressed at this stage of the proceedings.

Further, by appointing this Court as the "gatekeeper" in which the application must first be filed to determine whether any issue may have merit, *see* 22 O.S.Supp.1995, § 1089(D), the Legislature has indicated an

intent to ease some of the pressure of our already overburdened district courts. If this Court determines a hearing is required, we will limit the scope of the hearing to issues which have arguable merit and thereby assure all litigants in those venues a speedier disposition of claims.

Additionally, the new procedure requires the application to be filed before direct appeal is completed, thus shortening the overall time of the appellate process. This assures all parties that, although an appellant may still use collateral review as a "sword to upset the prior determination of guilt," *Ross v. Moffitt,* 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974), he must do so in a timely manner or risk losing his claim. A speedier disposition of a petitioner's claim enables this Court to address more expeditiously other claims by other appellants, thus ensuring that justice for all parties is rendered in a timely manner.

We find each of these benefits—conservation of resources at both the trial and appellate level, as well as a speedier disposition of claims throughout the system—to be a rational basis for the Legislature's revision of Section 1089. And since the revised law still affords a petitioner an adequate opportunity to present his claim within the adversary system, we find no violation of the Equal Protection Clause of either the United States or Oklahoma constitutions.

■■■■ Turning to Petitioner's complaint the amended law violates his right to Due Process[3], we also find no merit. "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria*

---

**2.** We analyze the new capital post-conviction procedure in toto to determine if the recent enactment satisfies the rational basis test regardless of the fact certain provisions of the new procedure are not applicable based on the facts of this case.

**3.** The quintessential requirements of due process are notice and opportunity to be heard. *Cooper v. State,* 889 P.2d 293, 301–02 (Okl.Cr.1995), *reversed on other grounds,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). However, as Judge Chapel pointed out in his special concurrence to *Wallace v. State,* 893 P.2d 504, 517–20 (Okl.Cr.1995), the boundaries of due process

cannot be easily delineated. Here, Petitioner does not argue a due process violation simply as a lack of notice or lack of opportunity to be heard; he argues it in conjunction with a right of access to the courts. As a prisoner's right of access has been described both as a consequence of the right to due process of law and as an aspect of equal protection, *Murray v. Giarratano,* 492 U.S. 1, 11, 109 S.Ct. 2765, 2771, 106 L.Ed.2d 1 (1989), Petitioner's right of access claim is resolved both under equal protection and within the broad boundaries of equal process.

*and Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). *See also Moore v. State,* 900 P.2d 996, 1000 (Okl.Cr.1995) ("Generally speaking, due process encompasses 'those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.'" (quoting *Application of Fowler,* 356 P.2d 770, 778 (Okl.Cr.1960). *See also Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977) (whether complained-of statute "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."); *Brown v. Board of Levee Com'rs,* 50 Miss. 468, 478–79 (1874) ("whether written 'per legale judicium pariu, suorum, rel per legem terrae' as found in the Magna Carta; 'by the law of the land, or the judgment of his peers'; 'due process of law'; 'due course of law'; or 'according to the law of the land,' all have the same general interpretation").

■ However, it must also be remembered that the term denotes more than simply the law of the land or the law as it was at the time the constitution took effect:

> For that would seem to deny to the legislature the power to alter, change or amend the law. Yet we know that it is every day's practice for the law-making department of the government to repeal old laws, enact new, and change remedies.
>
> The principle does not demand that the laws existing at any point of time shall be irrepealable, or that any forms of remedies shall necessarily continue.
>
> It refers to certain fundamental rights which that system of justice, of which ours is a derivative, has always recognized. If any of these are disregarded, in the proceedings by which a person is condemned to the loss of life, liberty or property, then the deprivation has not been by "due course of law."

*Brown,* 50 Miss. at 479. We also observe that the Constitution does not require the States to follow any particular federal model in enacting its post-conviction proceedings. *See Giarratano,* 492 U.S. at 13, 109 S.Ct. at 2772 (O'Connor, J. concurring); *Id.* at 14, 109 S.Ct. at 2772 (Kennedy, J., concurring in the judgment.) (citing to *Bounds v. Smith,* 430 U.S. 817, 833, 97 S.Ct. 1491, 1500, 52 L.Ed.2d 72 (1977), he observed "[t]he requirement of meaningful access can be satisfied in various ways," adding "[t]he intricacies and range of options are of sufficient complexity that state legislatures and prison administrators must be given 'wide discretion' to select appropriate solutions.").

■ In short, the duty of the State under these cases is not to duplicate the legal arsenal that may be available to similarly situated litigants in other states, or even under the previous statute of this State; but only to assure this Petitioner and others in his situation an adequate opportunity to present claims fairly in the context of this State's appellate process. Within this framework, resolution of the issue whether the procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More specifically, prior decisions of the Supreme Court indicate that a due process analysis:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). It is within this framework that we approach Petitioner's claim.

Concerning the "private interest that will be affected by the official action," the amendments to Section 1089 merely tightened procedures already in place. Major changes to

Section 1089 require a petitioner to file his application first with this Court within a tighter schedule, and narrow the scope of applicable issues on appeal. However, this Court had to a great extent already narrowed the issues available to a post-conviction applicant. *See Mayes v. State*, 921 P.2d 367 (Okl.Cr.1996) and cases cited therein. Under the new statute, this Court will review any claim which was not and could not have been raised in a direct appeal and supports a conclusion either that the outcome of the trial would have been different but for the claimed error or that the petitioner is factually innocent. 22 O.S.Supp.1995, § 1089(C). The amendments to the statute do not appreciably narrow the scope of claims this Court currently addresses. Concerning the accelerated filing schedule, a petitioner can still file a second or subsequent claim upon a proper showing that the claim was not recognized by or could not have been reasonably formulated from a final decision of either the Supreme Court of the United States or a federal appellate court; or is a new rule of constitutional law given retroactive effect which had not been announced before the date of the earlier application. 22 O.S.Supp. 1995, § 1089(D)(9). Petitioner has presented nothing showing how filing the application in the first instance with this Court affects the process in any way.

Concerning the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards: we believe the same arguments advanced in the previous paragraph dispose of this argument. There is no appreciable risk of an erroneous deprivation beyond that which existed in the previous version of the statute [4].

Concerning the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail: the purposes for the new act were set forth above. The new statute greatly conserves resources at both the trial and appellate level, and enables all levels of the judiciary to achieve a speedier disposition of claims.

■ Another factor involved in due process analysis does not favor Petitioner. In Oklahoma, specific statutes dealing with capital post-conviction relief were not enacted until 1987. This hardly constitutes a procedure "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 202, 97 S.Ct. at 2322. As a plurality of the Supreme Court observed in disposing of a due process claim that post-conviction counsel is constitutionally required:

> State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal. The additional safeguards imposed by the Eighth Amendment at the trial stage of a capital case are, we think, sufficient to assure the reliability of the process by which the death penalty is imposed. We therefore decline to read either the Eighth Amendment or the Due Process Clause to require yet another distinction between the rights of capital case defendants and those in non-capital cases.

*Murray v. Giarratano*, 492 U.S. 1, 10, 109 S.Ct. 2765, 2770–71, 106 L.Ed.2d 1 (1989) (footnote omitted).[5]

In short, since Petitioner is receiving exactly that which he is due under state law—competent counsel and an opportunity to present claims to this Court—he cannot claim any deprivation without due process.

For the reasons stated above, we find no merit to Petitioner's claim the amended ver-

---

4. This rationale also disposes of Petitioner's almost parenthetical complaint that the amended statute violates ex post facto principles. As is shown by this discussion, the new procedure does not impermissibly alter or remove a capital petitioner's access to a full and fair review.

5. It is this Eighth Amendment restriction, placed on the proceedings at the trial level and reviewed on direct appeal, which disposes of Petitioner's almost parenthetical argument the new system does not provide an adequate system of review to insure defendants are not put to death based upon unreliable and unconstitutional trials.

sion of Section 1089 is unconstitutional. We now turn to his specific complaints.

### I.B.

In his first ground for relief, Petitioner asserts relief is warranted based upon the recent decision of *Cooper v. Oklahoma*, 517 U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) "as the procedures employed by the court to determine Mr. Hatch's competency to stand trial were constitutionally inadequate". (Petitioner's brief, pg. 10). Citing to *Colbert v. State*, 654 P.2d 624 (Okl.Cr. 1982), Petitioner initially argues that competency proceedings were conducted in his case under an antiquated statutory scheme which provided no standard for a determination of competency to stand trial. Petitioner then relies on *Cooper* to argue that in competency determinations, employing a standard of proof higher than a preponderance of the evidence violates a defendant's constitutional rights. Therefore, Oklahoma's practice of requiring defendants to prove competency by clear and convincing evidence is a structural error infecting the process and not a trial error which could be rendered harmless. Petitioner asserts the decision in *Cooper* represents a substantial departure from current practice and is an issue which could not have been previously called to the attention of the courts. Based on this argument, he claims it is properly brought on post-conviction.

Although combined into one proposition, Petitioner's assertions here are really two separate arguments. In *Cooper*, the United States Supreme Court held that 22 O.S.1991, § 1175.4(B) [6] violates an accused's right to due process. This limited holding does not affect Petitioner's case. Section 1175.4(B) of Title 22 was enacted by the Oklahoma Legislature June 25, 1980. Petitioner was sentenced in April 1980. Therefore, *Cooper* is not applicable to Petitioner's case.

Further, the "clear and convincing" standard of proof condemned in *Cooper* was not applied to Petitioner. The statutes in place when Petitioner was tried did not require a post-examination competency hearing and did not place a clear and convincing burden of proof on the accused. The statute simply provided that if a doubt arose as to "present sanity", an accused was to be examined at a state hospital. During that time, criminal proceedings were suspended. If, after observation by doctors at the hospital, the accused was found "presently sane", the order of the district court suspending proceedings was dissolved and the proceedings resumed. 22 O.S.1971, § 1162–1174. Petitioner was found "mentally competent" to stand trial in 1979. Thus, there was no danger that the "clear and convincing" standard could have been applied to Petitioner.

The second portion of the argument, that the proceedings in place at the time Petitioner was tried are unconstitutional, does not rely on *Cooper* for support but on *Colbert*. *Colbert* was decided in 1982. A claim based upon this case could have been made at any time since 1982. No such claim has been previously raised. Petitioner has failed to show that the factual or legal basis for a claim under *Colbert* was non-existent when he filed earlier appeals. 22 O.S.Supp. 1995, § 1089(D)(8). Accordingly, Petitioner has failed to meet the statutory requirements for relief, and this ground for relief is denied.[7]

### II.

In his second ground for relief, Petitioner contends the trial court lacked subject matter jurisdiction to try him because the information charging him with felony murder did not confer jurisdiction on the court. Pe-

---

6. 22 O.S.1991, § 1175.4(B) provides that the accused in a criminal prosecution is presumed to be competent to stand trial unless the accused proves incompetence by clear and convincing evidence.

7. This writer finds that a petitioner is prevented from raising issues in a subsequent post-conviction application unless he can demonstrate cause for his procedural default or prejudice suffered thereby or that failure to hear his claim would result in a miscarriage of justice. I also find the language of the new post-conviction procedure act follows the reasoning of the United States Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) requiring a showing of cause for a procedural default. *See Mayes v. State*, 921 P.2d 367, 372 (Okl.Cr.1996), fn. 3.

titioner asserts the information failed to sufficiently set forth the elements of robbery with a dangerous weapon, the underlying felony supporting the felony murder charge. Petitioner argues that because the claim is one of jurisdiction, it can be raised at any time.

■ Any failure to allege facts constituting an offense does not affect the trial court's jurisdiction. *Parker v. State*, 917 P.2d 980, 986 (Okl.Cr.1996). Therefore, as the issue here is not one of jurisdiction, but of the specificity of an information, it is a claim which could have been raised previously. Petitioner has presented nothing to excuse his failure to present this claim previously. Therefore, further consideration of the claim is waived.

Within this proposition, Petitioner has raised three side issues. He claims this Court should have sua sponte recognized the jurisdictional issue on direct appeal, that he has been denied access to the courts and to counsel, and that application of *Parker* violates the prohibition against ex post facto laws and constitutes arbitrary and unequal state action.

At the time of Petitioner's direct appeal, the law was the same as it is now: any failure to allege facts constituting an offense did not affect the trial court's jurisdiction. *See Bruner v. State*, 612 P.2d 1375, 1380 (Okl.Cr.1980); *Holloway v. State*, 602 P.2d 218, 220 (Okl.Cr.1979)[8]. Therefore, there was no jurisdictional issue for this Court to recognize sua sponte and application of *Parker* to Petitioner's case does not violate the constitutional prohibition against the ex post facto application of criminal laws. *See Miles v. State*, 922 P.2d 629 (Okl.Cr.1996).

■ Petitioner's claims of a denial of access to the courts and to counsel are collateral matters not properly brought under the purview of post-conviction. *See Paxton v. State*, 910 P.2d 1059, 1060 (Okl.Cr.1996). Accordingly, Petitioner's second ground fails to meet the statutory requirements for post-conviction relief.

### III.

■ In his third ground for relief, Petitioner claims appellate counsel was ineffective for failing to raise the issue of subject matter jurisdiction on direct appeal. Petitioner claims that had this issue been raised on direct appeal, he would have been entitled to relief.

The issue of ineffective assistance of appellate counsel, like any other claim, must be raised at the first available opportunity. Petitioner could have raised this issue in his first application for post-conviction relief, but did not. He has also failed to show that the factual or legal bases for the claim were unavailable at the time. Therefore, the claim is not properly before this Court in a subsequent post-conviction application.

■ Petitioner must have anticipated this result because he also argues that his first post-conviction counsel was ineffective for failing to raise the issue. Petitioner also finds his first post-conviction counsel ineffective for failing to challenge the admission of evidence of a Texas homicide and the filing of an untimely amended bill of particulars.

As the United States Supreme Court said in *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1992):

> There is no constitutional right to an attorney in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance).

---

**8.** In 1992, this Court decided *Miller v. State*, 827 P.2d 875 (Okl.Cr.1992) (Lumpkin.J., concur in part/dissent in part) and held that an Information must specifically allege each element of the crime in order to be sufficient to confer jurisdiction on the court. *Miller* was overruled in *Parker*, 917 P.2d at 986.

*See also Thomas v. State*, 888 P.2d 522, 527 (Okl.Cr.1994).[9] Therefore, Petitioner cannot claim constitutionally ineffective assistance of counsel based on a violation of the federal constitution [10]. Relief is not warranted on ground three.

## IV.

We next address Petitioner's motions for discovery and an evidentiary hearing. To determine the scope of discovery, we must again turn to the scope of what claims are allowed under the new act.

The authority for discovery is provided by 22 O.S.Supp.1995, § 1089(D)(3). That provision reads:

> Subject to the specific limitations of this section, the Court of Criminal Appeals may issue any orders as to discovery or any other orders necessary to facilitate post-conviction review.

(emphasis added). The "specific limitations of this section" are found at 22 O.S.Supp. 1995, § 1089(C). That section reads:

> The only issues that may be raised in an application for post-conviction relief are those that:
>
> 1. Were not and could not have been raised in a direct appeal; and
>
> 2. Support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent.

Therefore, by the plain language of the statute, discovery is limited only to issues which are the proper subject of post-conviction review, i.e., ones which could not have been raised on direct appeal, which show a defendant innocent or which show the outcome of the trial would have been different but for the errors, and issues which are not *res judicata*. In other words, this Court does not have the authority to grant general discovery requests absent a showing the request is related to an issue which could have been raised within the scope of Section 1089.

With this precept in mind, we turn to Petitioner's specific discovery requests. We begin with his belief that a *Brady* [11] violation occurred (although Petitioner has no proof to offer that it did occur) as Petitioner discusses this generally in his argument as to the scope of discovery.

Our new Rule 9.7 reads:

> (3) In considering such discovery requests, this Court shall presume the parties complied with all discovery rules issued by the district court at the time of trial and in accordance with Sections 2001 and 2002 of Title 22. Consequently, requests making allegations to the contrary shall be supported with affidavits, describing as particularly as possible the material sought to be discovered, and why such material was not supplied at the time of trial. Should these affidavits be sufficient to raise a substantial question of compliance with earlier discovery orders, and the material being sought would have resulted in a different outcome at trial, this Court may direct a response from the opposing party showing cause why a discovery order should not be issued.

*Rules of the Court of Criminal Appeals*, Rule 9.7(D)(3), 900–904 Okl.Decs. (West) at XCVII (to be codified at 22 O.S.Supp.1996, ch. 18 app.). Under this Rule, if a party complied with discovery ordered by the trial court, there is no issue concerning that discovery in post-conviction proceedings. If a party failed to comply with the court ordered discovery, or if an allegation claimed failure to comply, this Rule provides counsel with the opportunity to show this Court a failure to comply is an issue which properly warrants relief in post-conviction proceedings.

---

**9.** Petitioner has raised this issue based on a right to effective assistance of counsel under federal constitutional procedures and we address it only within that context. The issue has not been presented based on Oklahoma constitutional or statutory provisions and we do not address it on that basis at this time.

**10.** Our prior decision in *Smith v. State*, 878 P.2d 375, 378 (Okl.Cr.1994) wherein we reviewed the merits of an effective assistance of post-conviction counsel claim on a subsequent post-conviction application was in error.

**11.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Petitioner implies that since no discovery orders were in effect and the statute was not in effect at the time of the proceedings against him, the section is not applicable. This is not entirely true. Regardless of whether Sections 2001 and 2002 of Title 22 were in effect, or whether there were discovery orders by the court, the prosecutor has an obligation to turn over evidence which may be exculpatory to a defendant whether requested or not. Petitioner himself cites *Brady v. Maryland,* the seminal case on this issue.

Implicit, therefore, in Petitioner's assertion a *Brady* violation occurred is an accusation a prosecutor acted in an unethical, unconstitutional manner. An affidavit specifically averring Petitioner has reason to believe this transgression occurred is required to support such an accusation. Granting any relief based upon bald allegations or suspicions would clearly go against the presumption of correctness we attach to trial proceedings, and to the presumption we use in dealing with counsel as officers of the court. Further, the affidavit is necessary to comply with 22 O.S.Supp.1995, § 1088.1.

Here, Petitioner has failed to include such an affidavit in support of his *Brady* accusations. Accordingly, they are denied.

Petitioner also argues that an evidentiary hearing is required to determine the issues raised herein. The same rational we applied above also applies here. If a claim is not within the scope of issues this Court is permitted to review under 22 O.S.Supp.1995, § 1089(C), this Court is without authority to order a hearing on the issue. Accordingly, Petitioner's request for an evidentiary hearing is denied.

Having carefully examined Petitioner's application, we find that Petitioner is not entitled to relief. The Application for Post–Conviction Relief, Request for Stay of Execution, and Request for Discovery and Evidentiary Hearing is *DENIED.*

JOHNSON, P.J., and CHAPEL, V.P.J., concur.

LANE, J., concurs in result.

STRUBHAR, J., not participating.

LANE, Judge, concurring in results.

I concur in the results of the majority, but I write to confirm my position on the allegation the Information prosecuted in this case did not confer jurisdiction on the trial court.

I still maintain the position I took in *Parker v. State,* 917 P.2d 980 (Okl.Cr.1996). I assert that the reasoning I expressed therein applies to this case and an affirmance is warranted but not for the reasons expressed by the majority.