**Rickey Bernard ROBERTS,
Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Secretary,
Florida Department of Corrections,
Respondent–Appellee.**

No. 92–4780.

United States Court of Appeals,
Eleventh Circuit.

Aug. 10, 1994.

---

Martin J. McClain, Chief Asst. Capital Collateral Representative, Office of the Capital Collateral Representative, Thomas H. Dunn, Sp. Asst. Capital Collateral Representative, Tallahassee, FL, for appellant.

Ralph Barreira, Asst. Atty. Gen., Fariba Komeily, Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, DUBINA and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

Rickey Bernard Roberts ("Roberts"), a Florida prison inmate convicted in 1985 of first-degree murder, armed sexual battery, and armed kidnapping, appeals the district court's judgment denying his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. After a thorough review of the record and briefs, and after hearing oral argument, we conclude that the district court correctly denied habeas relief and, according-

ly, we affirm the judgment of the district court.

## I. BACKGROUND

Following Roberts' convictions and penalty proceeding, the jury recommended a sentence of death. After independent consideration of the facts of the case, the trial judge accepted the recommendation of the jury and imposed a death sentence. Roberts' convictions and sentences [1] were affirmed on direct appeal. *Roberts v. State,* 510 So.2d 885 (Fla. 1987), *cert. denied,* 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988). Roberts filed a state habeas petition under Fla.R.Crim.P. 3.850 which was summarily denied. The denial of post-conviction relief was affirmed on appeal. *Roberts v. State,* 568 So.2d 1255 (Fla.1990). Roberts then filed a petition for writ of habeas corpus in federal district court. The district court conducted an evidentiary hearing and thereafter denied relief. *Roberts v. Singletary,* 794 F.Supp. 1106 (S.D.Fla.1992).

The factual background of this case has been recounted in the prior opinions of the federal district court and the Florida Supreme Court; however, we provide a brief recitation of the relevant events. According to the state's key witness, Michelle Rimondi ("Rimondi"), during the early morning hours of June 4, 1984, she, the murder victim, George Napoles ("Napoles"), and Rimondi's friend Jammie Campbell ("Campbell") were parked on the beach off the Rickenbacker Causeway near Key Biscayne, Florida, drinking wine. Campbell fell asleep in the front passenger seat in · Napoles' Dodge Omni. Roberts approached the Omni and asked Napoles and Rimondi what they were doing at the beach and asked for identification. Suspecting that Roberts was an undercover beach patrol officer, Napoles gave Roberts his driver's license. Roberts first frisked Napoles and then frisked Rimondi. When Roberts touched Rimondi on the breasts and thighs, Napoles became suspicious and asked Roberts for some identification.

Roberts took Napoles to his car, supposedly to retrieve some identification, and reached into the back seat and pulled out a baseball bat. Roberts then forcibly brought Napoles back to the Omni where he ordered Rimondi to face the interior of the Omni and not turn around. Looking over her right arm, Rimondi saw Roberts repeatedly hit Napoles in the back of the head with the bat. Rimondi testified she was unable to scream. Roberts then pushed Napoles' body towards the beach. Still holding the bat, he grabbed Rimondi and pulled her near the body and told her that if she did not take her clothes off she "was going to get just like George or worse." R.—VII, 2187.

When it appeared that someone might be coming, Roberts told Rimondi to get dressed and forced her into his car where he eventually raped her. Roberts then left the beach with Rimondi. Realizing that he had lost his wallet, Roberts returned to the beach with Rimondi, found the wallet and checked on Napoles. Rimondi testified that Napoles was still alive at that time, with a very faint pulse. Roberts raped Rimondi a second time before taking her to her sister's boyfriend's house where she was staying that weekend. Napoles' body was discovered later that morning.

Soon after Napoles' body was discovered, Rimondi informed the police that a black man wearing a shirt with the name "Rick" on it had killed Napoles and raped her. After receiving a tip that Roberts was the "Rick" responsible for the crime, detectives questioned Roberts concerning the incident. Rimondi identified both Roberts and his car. Roberts initially denied being on Key Biscayne in the past two months. However, after learning that his palm print was detected on the roof of Napoles' Omni, Roberts admitted being on the Key during the early morning hours of June 4. He maintained that he picked up Rimondi while she was hitchhiking on the causeway. According to Roberts' trial testimony, Rimondi told him that she needed a ride home because her friends had passed out from drinking wine. Roberts claims that after Rimondi got into his car, she asked him to return to her friend's car to get her purse. While Rimondi was getting her purse, Roberts claims to

---

**1.** Roberts was also sentenced to concurrent life sentences.

have leaned into the car to look at her friend on the front seat, placing his hand on the roof. According to Roberts, after retrieving the purse, he then drove Rimondi home. Roberts claimed he never saw Napoles and did not rape Rimondi.

## II. ISSUES

Roberts raises nine issues on appeal:

1. Whether the application of Florida's Rape Shield Statute violated the Sixth and Fourteenth Amendments where Roberts was precluded from cross-examining a State's witness about her occupation as a prostitute which gave her a potential motive and where he was precluded from testifying about her statement to him concerning her occupation as a prostitute.

2. Whether the withholding of material exculpatory evidence from the defense violated the Fifth, Sixth, and Fourteenth Amendments.

3. Whether the refusal to disclose during a deposition the contents of statements of a State's witness to an agent of the State violated the Fifth, Sixth, and Fourteenth Amendments.

4. Whether the trial court's ruling that Roberts could not cross-examine several State's witnesses about pending charges violated the Sixth and Fourteenth Amendments.

5. Whether Roberts was deprived of the effective assistance of counsel at the guilt-innocence phase of his capital trial in violation of the Sixth and Fourteenth Amendments.

6. Whether Roberts was denied the effective assistance of appellate counsel when counsel failed to raise meritorious issues on appeal.

7. Whether Roberts was denied the effective assistance of counsel at his capital penalty phase.

8. Whether Roberts' sentencing jury was inadequately instructed regarding the aggravating circumstances.

9. Whether Roberts was deprived of his right to have the sentencer consider valid mitigating factors.

The district court found several of Roberts' claims to be procedurally defaulted and found no merit to Roberts' remaining claims for relief. We affirm the judgment of the district court denying habeas relief for all of the reasons expressed in its thorough and articulate opinion. *See Roberts v. Singletary*, 794 F.Supp. 1106 (S.D.Fla.1992). We feel compelled, however, to address separately several issues raised by Roberts in this appeal.

## III. DISCUSSION

"In reviewing a petition filed under 28 U.S.C. § 2254, we presume that factual findings made by a state court are correct. We review factual conclusions made by the district court under the clearly erroneous standard. We review mixed questions of fact and law *de novo.*" *Hamilton v. Ford*, 969 F.2d 1006, 1010 (11th Cir.1992) (citations and footnote omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993).

### A. *Confrontation Clause Issue*

Prior to trial, Roberts' defense counsel attempted to discover whether Rimondi gave an inconsistent version of the rape and murder to her rape treatment counselor, Denise Moon ("Moon"). Moon counseled Rimondi on a weekly basis up until the time of trial. At the time the counseling sessions began, Moon was an employee of the State. Shortly after Rimondi's treatment began, Moon joined the state attorney's office as a witness coordinator. At her deposition, Moon refused to reveal the contents of her discussions with Rimondi, relying on Fla.Stat. 90.-5035, which grants a sexual assault victim and her counselor a privilege not to reveal confidential communications made during rape counseling. At trial, defense counsel moved to reopen the deposition of Moon. R.—III, 630. The trial court inquired of defense counsel what Rimondi said in her deposition about the content of her discussions with Moon and counsel stated that he did not ask Rimondi about her discussions with Moon. R.—III, 621–22. The trial court denied this motion. R.—III, 630–31.

■ In his federal habeas petition Roberts contends that under *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), his Sixth Amendment right was violated when he was unable to question Moon regarding any inconsistent statements Rimondi may have made regarding the rape and murder. In its response, the State alleges that this claim is procedurally defaulted because Roberts did not raise it on direct appeal. The district court found the issue to be procedurally defaulted. We agree.[2]

Roberts first raised this claim in his State postconviction proceeding under Rule 3.850, Fla.R.Crim.P. The Florida Supreme Court held that the claim was procedurally barred because it could have been raised on direct appeal. The court further found that "[n]one of the decisions relied upon in connection with th[is] claim[ ] is such a change in the law as to preclude a procedural bar under *Witt v. State,* 387 So.2d 922 (Fla.), *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980)." *Roberts v. State,* 568 So.2d at 1257–58. Upon this finding, the district court found the *Ritchie* claim to be procedurally defaulted in federal court. *See Roberts v. Singletary,* 794 F.Supp. at 1123.

■ The Florida Supreme Court relied upon an "independent and adequate state ground" in resolving the claim. *See. Coleman v. Thompson,* 501 U.S. 722, 734, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991). *See also Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar") (citations omitted). Accordingly, Roberts may not obtain federal habeas corpus relief absent a showing of "cause and prejudice." *Coleman v. Thompson,* 501 U.S. at 746–47, 111 S.Ct. at 2563; *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The district court found that Roberts failed to show cause for his procedural default. The district court stated:

The tools were at hand to construct such a claim at the time Roberts filed his motion for postconviction relief.... Moreover, a specific *Ritchie* claim also could have been stated. The Supreme Court granted certiorari in *Ritchie* on May 27, 1986. 476 U.S. 1139, 106 S.Ct. 2244, 90 L.Ed.2d 690. Petitioner's initial direct appellate brief in the Florida Supreme Court was filed two months later, on July 28, 1986. The legal basis for the constitutional claim was reasonably available to appellate counsel. *See Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984).... No "external impediment" prevented appellate counsel from constructing or raising the claim. *See Carrier,* 477 U.S. 478, 491–92, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (applying cause and prejudice standard to procedural default on appeal).

*Roberts v. Singletary,* 794 F.Supp. at 1123–24.

The district court also correctly concluded that Roberts' procedural default could not be attributed to constitutionally inadequate assistance of counsel. The district court found that "[t]he fact that counsel may have missed the issue, or chose not to include it for strategic reasons, here does not fall below the range of reasonable attorney performance." *Id.* at 1124.

■ Finally, Roberts may not avail himself of the fundamental miscarriage of justice exception to this procedural bar. In extraordinary cases, a federal court may consider an issue notwithstanding the existence of a default. A federal court may do so "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Johnson v. Singletary,* 938 F.2d 1166, 1175 (11th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992).

Roberts sought disclosure of Moon's files or her testimony for impeachment evidence. Pet.Brief at 62. After a thorough review of Rimondi's testimony, including defense counsel's tenacious cross-examination of her, we

---

2. Although we find the *Ritchie* claim to be procedurally defaulted, our review of the record persuades us that even if we addressed the issue on the merits, Roberts would be entitled to no relief.

are persuaded that further impeachment of Rimondi with any inconsistent statements would not have changed the outcome of the trial. The evidence of Roberts' guilt was overwhelming. Roberts' girlfriend testified that Roberts told her he killed a man, R.—VIII, 2381; Roberts changed his appearance right after the crime, R.—VIII, 2392, 2396 2855; Roberts' palmprint and fingerprint were found on the victim's car, R.—VI, 1627; blood was located in Roberts' car, R.—VIII, 2498; bloody clothing was found in Roberts' residence, R.—VIII, 2504; Roberts told persons the night before the crime that he owned a baseball bat, R.—VI, 1731, R.—IX, 2930; Roberts gave inconsistent statements to the police, R.—VI, 1644, 1648–49. Considering all of this evidence in conjunction with Rimondi's testimony, we cannot say that the trial court's denial of disclosure probably resulted in the conviction of an actually innocent person. This is true whether the *Sawyer v. Whitley*, —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), or the *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1987) (plurality opinion), formulation of the actual innocence test applies. *See* pp. 1479–80, *infra*. Accordingly, we hold that Roberts' *Ritchie* claim is procedurally defaulted.[3]

### B. *Aggravating Factors*

█ Roberts contends that portions of the jury instructions at the sentencing phase were constitutionally infirm. Roberts specifically argues that the jury instructions regarding "especially heinous, atrocious or cruel," "under sentence of imprisonment," "in the course of a felony," and the mercy instruction violated his constitutional rights. The Florida Supreme Court, on appeal of Roberts' Rule 3.850 motion, held these claims to be procedurally barred for failure to raise them on direct appeal. On this basis, the district court found the claims to be procedurally barred. The district court concluded that Roberts could not establish cause and prejudice for the procedural lapse and the challenge did not fall within the fundamental

miscarriage of justice exception to procedural bar.

We agree with the district court with one caveat. Our circuit recently held that a petitioner makes a colorable showing that he or she is "actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body." *Johnson v. Singletary*, 938 F.2d at 1183.

> That is, but for the alleged constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is *ineligible* for the death penalty.

*Id.* Thus, because the district court failed to enunciate a valid aggravating factor, we must find at least one of the aggravating factors to be valid in order for Roberts to be eligible for the death penalty. The district court concluded that even if one factor were stricken, Roberts would still remain eligible for the death penalty because three other aggravating factors remain.

The district court's error does not require a remand because we hold the aggravating factor, "under sentence of imprisonment," to be a valid aggravating factor. At the time of the instant offense, Roberts was in violation of parole for a rape and attempted murder committed in Maryland in 1974. The judge concluded that being on parole qualified as being under a "sentence of imprisonment," and instructed the jury accordingly. Accordingly, Roberts remains eligible for the death penalty.

### C. *Fundamental Miscarriage of Justice Exception As It Relates To Guilt Stage Issues*

We make one other refinement to the district court's reasoning. In reference to the confrontation clause issue and the cross-ex-

---

3. At oral argument, Roberts argued that the Florida courts do not consistently apply procedural bars. This argument is specious. *See Smith v.* *Dugger*, 840 F.2d 787, 796 (11th Cir.1988), *cert. denied*, 494 U.S. 1047, 110 S.Ct. 1511, 108 L.Ed.2d 647 (1990).

amination of state's witnesses issue, the district court determined that Roberts was unable to avail himself of the fundamental miscarriage of justice exception to excuse his procedural default. The district court found that neither of these alleged errors resulted in the conviction of an "actually innocent" person.

Our recent case of *Alderman v. Zant,* 22 F.3d 1541 (11th Cir.1994), discussed the fundamental miscarriage of justice exception to procedural bar. The court noted that in *Johnson, supra,* we held that the fundamental miscarriage of justice exception is only available upon a showing of "actual innocence." *Alderman,* 22 F.3d at 1552. One year after *Johnson,* the Supreme Court restated our actual innocence test holding that, in order "to show 'actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Sawyer v. Whitley,* —— U.S. ——, ——, —— & n. 15, 112 S.Ct. 2514, 2517, 2523 & n. 15, 120 L.Ed.2d 269 (1992). Subsequently, in our later decision, *Johnson v. Singletary,* 991 F.2d 663, 667–68 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2049, 124 L.Ed.2d 70 (1993), we noted that the actual innocence exception replaced the old "ends of justice" exception to the abuse of the writ bar.

As in *Alderman,* Roberts involves only procedural default bars, not abuse of the writ bars. The Supreme Court concluded that the difference does not matter. "[F]rom the unity of structure and purpose in the jurisprudence of state procedural defaults and abuse of the writ ... the standard for excusing a failure to raise a claim at the appropriate time should be the same in both contexts." *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

The *Alderman* court noted that there is a split of authority regarding the test to be applied to the defaulted guilt stage claims. Some habeas petitioners suggest that the *Sawyer* formulation of the actual innocence test applies only to the sentence stage claims while the "colorable showing of innocence"

test announced in *Kuhlmann v. Wilson,* 477 U.S. 436, 454 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1987) (plurality opinion), is the proper exception to apply to guilt stage claims.

The Supreme Court recently granted certiorari in *Schlup v. Delo,* 11 F.3d 738, 740 (8th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994), to resolve the question. However, just as in *Alderman,* regardless of which formulation of the actual innocence test applies, Roberts has not made a sufficient showing in this case to entitle him to the benefit of the fundamental miscarriage of justice exception to overcome the procedural bars the district court correctly found to be applicable to various of his guilt stage claims.

## IV. CONCLUSION

Based upon the foregoing discussion, and for the reasons stated in the district court's opinion, we affirm the district court's judgment denying habeas corpus relief.

AFFIRMED.