**Gregg Francis BRAUN, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

No. PC–96–1296.

Court of Criminal Appeals of Oklahoma.

April 24, 1997.

Benjamin McCullar, Law Firm of Randy C. Parsons, Shawnee, for Petitioner on appeal.

## OPINION DENYING APPLICATION FOR POST–CONVICTION RELIEF, EVIDENTIARY HEARING AND DISCOVERY

LUMPKIN, Judge.

Petitioner Gregg Francis Braun pled nolo contendere to Count I, Murder in the First Degree (21 O.S.Supp.1989, § 701.7(A or B)); Count II, Shooting with Intent to Kill (21 O.S.Supp.1987, § 652); Count III, Shooting with Intent to Kill (21 O.S.Supp.1987, § 652); Count IV, Robbery with Firearms (21 O.S.Supp.1982, § 801); and Count V, Robbery with Firearms (21 O.S.Supp.1982, § 801) in Carter County Case No. CRF–89–332. The Honorable Thomas S. Walker, District Judge, sentenced Petitioner to twenty-five (25) years on each robbery count and life on each count of Shooting with Intent to Kill. After finding the presence of three aggravating circumstances, the trial court sentenced Petitioner to death for the murder. We affirmed. *Braun v. State*, 909 P.2d 783 (Okl. Cr.1995). His petition for a writ of certiorari to the United States Supreme Court was denied. *Braun v. Oklahoma*, —— U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 559 (1996). Petitioner filed his Original Application for Post–Conviction Relief in this Court on October 18, 1996, in accordance with 22 O.S.Supp. 1995, § 1089.

Before considering Petitioner's claims, we must again consider the narrow scope of review available under the amended Post–Conviction Procedure Act. As we have said numerous times, the Post–Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. *Walker v. State*, 933 P.2d 327 (Okl. Cr.1997) (interpreting Act as amended); *Fox v. State*, 880 P.2d 383, 384 (Okl.Cr.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995) (same conclusion under Act before amendments). The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Accordingly,

claims which could have been raised in previous appeals but were not are generally waived; and claims raised on direct appeal are *res judicata*. *Thomas v. State*, 888 P.2d 522, 525 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995); *Castro v. State*, 814 P.2d 158, 159 (Okl.Cr. 1991), *cert. denied*, 502 U.S. 1063, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992).

These procedural bars still apply under the amended Act. We have noted the new Act makes it even more difficult for capital post-conviction applicants to avoid procedural bars. *Walker*, 933 P.2d at 330–31. Under 22 O.S.Supp.1995, § 1089(C)(1), only claims which "[w]ere not and could not have been raised" on direct appeal will be considered. A capital post-conviction claim could not have been raised on direct appeal if (1) it is an ineffective assistance of trial or appellate counsel claim which meets the statute's definition of ineffective counsel under the Act; or (2) the legal basis of the claim was not recognized or could not have been reasonably formulated from a decision of the United States Supreme Court, a federal appellate court or an appellate court of this State, or is a new rule of constitutional law given retroactive effect by the Supreme Court or an appellate court of this State. 22 O.S. Supp. 1995, §§ 1089(D)(4)(b), 1089(D)(9). Should a Petitioner meet this burden, this Court shall consider the claim only if it "[s]upports a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." As we said in *Walker*,

> The amendments to the capital post-conviction review statute reflect the legislature's intent to honor and preserve the legal principle of finality of judgment, and we will narrowly construe these amendments to effectuate that intent. Given the newly refined and limited review afforded capital post-conviction applicants, we must

also emphasize the importance of direct appeal as the mechanism for raising all potentially meritorious claims. Because the direct appeal provides appellants their only opportunity to have this Court fully review *all* claims of error which might arguably warrant relief, we urge them to raise all such claims at that juncture.

*Walker*, 933 P.2d at 331 (footnote omitted, emphasis in original). With that dictate in mind, we now turn to Petitioner's claims.

■ For his first proposition, Petitioner claims the Information charging him was fatally defective. This claim centers around language in the charging Information he claims deprived the district court of jurisdiction. This claim could have been raised on direct appeal, and is thereby waived.

Petitioner acknowledges his analysis rests on decisions of this Court which have been overturned. *See Parker v. State*, 917 P.2d 980, 985–86 (Okl.Cr.1996) (overruling *Miller v. State*, 827 P.2d 875 (Okl.Cr.1992) and other cases which held language defects in an information went to the jurisdiction of the district court). Petitioner acknowledges this, but claims in a second section of the proposition that his case was pending on appeal before *Parker* was handed down; and to apply *Parker* retroactively to him violates principles of due process and *ex post facto*. We need not address this complaint at this juncture, as it is a moot point: how we *would* have addressed a claim is immaterial if that same claim is waived and *cannot* be addressed.

A third section of his first claim alleges this Court violated his right to due process by not addressing his claim *sua sponte* during his direct appeal. In support of this assertion, Petitioner cites cases where this Court *sua sponte* invoked jurisdiction.[1] However, Petitioner has cited nothing to this

---

1. *Duvall v. State*, 869 P.2d 332 (Okl.Cr.1994) (citing flaws in the filing of an application for post-conviction in this Court, the appeal from the district court was dismissed based on lack of jurisdiction in *this* Court); *Griffin v. State*, 357 P.2d 1040 (Okl.Cr.1960) (Court undertook fundamental error review, but did so only when no brief was filed and no one appeared for oral argument). Petitioner also cites *Phillips Petrole-*

*um Co. v. Oklahoma Tax Commission*, 876 P.2d 719 (Okl.App.1993) for the proposition this Court has a duty to inquire *sua sponte* into its own jurisdiction. The short answer to the use of this case is that Court of Civil Appeals cases, which although can be used as persuasive authority, are not binding precedents on this Court. 20 O.S. 1991, § 30.5.

Court requiring it to search the books for every conceivable assignment of error which may be presented when an appellate brief is properly filed. To the contrary, such is not our duty. *See* 22 O.S.Supp.1996, Ch. 18, App. *Rules of the Court of Criminal Appeals,* Rule 3.5(A)(5).

Accordingly, Petitioner's first assignment of error is waived, and this Court cannot address it.[2]

■ In a related second proposition, Petitioner claims he was subjected to an arbitrary denial of access to this Court. After she filed the brief-in-chief in his direct appeal, Petitioner's direct appeal counsel attempted to file a supplemental proposition alleging the alleged jurisdictional defects in the Information. The motion was denied by this Court pursuant to 22 O.S.Supp.1994, Ch. 18, App. *Rules of the Court of Criminal Appeals,* Rule 3.4(F)(2). Pointing to cases where we allowed such a supplemental proposition,[3] Petitioner claims the refusal in his case constituted violations of both due process and equal protection. As this claim was not and could not have been raised on direct appeal and arguably supports a claim that the outcome of the direct appeal would have been different, we can address the claim now. 22 O.S.Supp.1995, § 1089(C).

Maintaining consistency in the application of this Court's Rules has not always been easy. We are painfully aware that at least one federal court has, in the past, viewed this Court as inconsistent in the application of its rules, and as a result deemed our ruling of waiver as insufficient to establish a procedural bar on habeas review. *See Brecheen v. Reynolds,* 41 F.3d 1343 (10th Cir.1994), *cert. denied,* 515 U.S. 1135, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995).

Because this Court may have made such errors in the past is no excuse for compounding the problem by committing yet another error now by ignoring our Rules one more time. To do so could grant Petitioner relief to which he may not be entitled on collateral appeal. Additionally, the fact we have been viewed as inconsistent in the past does not mean we are inconsistent now. The two cases cited by Petitioner support this. In *Cudjo,* this Court granted permission to file a supplemental proposition, even though prohibited by this Court's rules, on January 30, 1995; we granted the same in the *Van White* case the same day. Yet by the time this Court reviewed Petitioner's request, we had become aware of our errors and refused his request on March 14, 1995. Petitioner has failed to show this Court that it has been inconsistent on this point since that time.

This isolated inconsistency aside, we do not find Petitioner was denied access to the courts. While we have referred to the concept, this Court has never fully explored what the term "access to the courts" denotes. The nature of Petitioner's claim necessitates a more thorough analysis now.

The United States Supreme Court has held there is a constitutional right of access to the courts to assert available rights under both federal and state law, *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and that right lies in the Due Process Clause within the Fourteenth Amendment to the United States Constitution. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (dealing with prisoners' right to adequate materials to present claims in court); *see also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (dealing with loss of credits and other punishments within prison system). Our own state Supreme Court has also observed that the principle of access to the courts is incorporated within both Art. 2, § 7[4] and Art. 2, § 6[5] of the Oklahoma Constitution.

---

2. Predictably, Petitioner also asserts direct appeal counsel was ineffective for failing to raise the issue. That is addressed below.

3. Petitioner gives as sole examples *Van White v. State,* F-89-566 (Unpublished Order signed by Chapel, V.P.J., Lane and Lumpkin, JJ.); and *Cudjo v. State,* F-91-130 (Unpublished Order signed by Johnson, P.J., Chapel, V.P.J., Lane, J.).

4. That Section reads: "No person shall be deprived of life, liberty or property, without due process of law."

5. That Section reads: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be

*Johnson v. Scott,* 702 P.2d 56, 58 (Okl.1985). But that court has also noted that Section 6 was not absolute. Rather, it is "intended to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief." *Rollings v. Thermodyne Industries, Inc.,* 910 P.2d 1030, 1032 (Okl.1996). Toward this end, the reviewing court should inquire as to whether a prisoner has a reasonably adequate opportunity to present his claim. *Gaines v. Maynard,* 808 P.2d 672, 676 (Okl. 1991) (citing *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir.), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988)). The focus is upon what is "reasonable." *See Brown v. Burkett,* 750 P.2d 481, 482 (Okl.1988) (interpreting whether mandatory bond provision as prerequisite to appeal is "reasonable"); *Elam v. Workers' Compensation Court of State,* 659 P.2d 938, 940 (Okl.1983) (Where procedural provisions are reasonably tailored to safeguard property interests and are uniformly applied, they will be upheld, citing to *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972)). The right is not unconditional. *Werner v. Utah,* 32 F.3d 1446, 1447 (10th Cir.1994) (restrictions may be placed on inmate who with repeated, frivolous filings could be said to have abused the system).

From a reading of both state and federal cases, we find the question is whether a person in Petitioner's position is allowed reasonable, meaningful access to the courts. *See Bounds,* 430 U.S. at 825, 97 S.Ct. at 1496 ("The inquiry is rather whether law libraries or other forms of legal assistance are needed to give prisoners a *reasonably adequate opportunity* to present claimed violations of fundamental constitutional rights to the courts." (emphasis added)); *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971) (Court established that, at least where interests of basic importance are involved, "absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful *opportunity* to be heard." (emphasis added)). We interpret these cases as not guaranteeing an absolute right, but guaranteeing the State will not "abridge or impair" a petitioner's right to apply for relief. *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941); *see also Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974) (states must "assure the indigent defendant an adequate opportunity to present his claims fairly. . . . ").[6] Whether the materials filed in support of a request for relief are proper is for the court itself to determine. *Id.* The question then becomes whether this Court's rule prohibiting additional propositions of error after the brief-in-chief is filed constitutes a due process violation.

The United States Supreme Court has noted that the touchstone of due process is protection of the individual against arbitrary action of government. *Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 234, 32 L.Ed. 623 (1889). "The very nature of due process negates any concept of inflexible pro-

---

administered without sale, denial, delay or prejudice."

**6.** Although we need not pursue the matter here, it seems obvious the cases cited in support of access to the courts have been limited by a subsequent case handed down by the Supreme Court. *See Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) ("Because *Bounds* did not create an abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense. That would be the precise analogue of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by *Bounds* is concerned, 'meaningful

access to the courts is the touchstone,' [citation], and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. . . . Although *Bounds* itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35–year line of access-to-courts cases on which *Bounds* relied, [citation].").

cedures universally applicable to every imaginable situation." *Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Toward that end, "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.* at 895, 81 S.Ct. at 1748–49; *see also Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Court has also noted that rules of procedure may be shaped by consideration of the risks of error, and should also be shaped by the consequences which will follow their adoption. *Wolff*, 418 U.S. at 567, 94 S.Ct. at 2980. " '[M]eaningful access' to the courts is the touchstone." *Bounds*, 430 U.S. at 823, 97 S.Ct. at 1495 (citing *Moffitt*, 417 U.S. at 611, 612, 615, 94 S.Ct. at 2444–2446).

While this Court is careful to assure that an appellant's rights are preserved, we are also mindful of the injurious effects of piecemeal litigation, which is contrary to the speedy disposition of the cases before us. Allowing piecemeal litigation encourages the withholding of arguably meritorious claims, and detracts from, rather than contributes to, finality of cases before this and other courts. So long as an appellant knows in advance what is expected of him (which is the very essence of our Rules), we do not think it is unreasonable to require an appellant to raise all available claims in his brief-in-chief on direct appeal. *See Walker*, 933 P.2d at 331–33; *see also Richards v. Jefferson County, Ala.*, —— U.S. ——, ——, 116 S.Ct. 1761, 1768, 135 L.Ed.2d 76 (1996) (discussing tax case: "As to this category of cases, we may assume that the States have wide latitude to establish procedures not only to limit the number of judicial proceedings that may be entertained but also to determine whether to accord a taxpayer any standing at all."); *id.* at ——————, 116 S.Ct. at 1768–69 (quoting *Brinkerhoff–Faris Trust & Sav. Co. v. Hill*, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930), the Court noted "[o]ur present con-

cern is solely with the question whether the plaintiff has been accorded due process in the primary sense,—whether it has had an *opportunity* to present its case and be heard in its support.... [W]hile it is for the state courts to determine the [procedural] as well as the substantive law of the State, they must, in so doing, accord the parties due process of law." (emphasis added)). In upholding this precept, we have tried to maintain consistency. *See Brown v. State*, 871 P.2d 56, 68 (Okl.Cr.1994); *Castro v. State*, 745 P.2d 394, 404 (Okl.Cr.1987). Therefore, the aberrations to the policy of this Court as pointed out by Petitioner constitute the exceptions, not the norm. We refuse to subscribe to the principle that adherence to this Court's rules—the publication of which is always done in advance of the time any changes take effect, and to which access is easily and readily available [7]—translates into arbitrary denial of access to the courts. Further, we find that even if Petitioner were precluded from arguing a claim (which we do not), such prevention arose not from any interference on the part of this Court, but rather on the failure of Petitioner's direct appeal attorney to raise a claim at the first available opportunity. Almost every trial attorney, taking a seat after closing argument, will immediately have "mental images" of additional argument he or she wishes had been made. The same is true of the appellate attorney, who after filing the brief, continues this mental analysis, wishing another point had been raised, or a proposition already raised had been discussed in a different manner. This type of analysis takes on a life of its own, which could continue *ad infinitum* if a rule of finality is not applied. At trial, finality (insofar as argument is concerned) is applied when closing argument is completed; on appeal, that same kind of finality is applied when the brief-in-chief is filed.

Consequently, published Rules of this Court gave notice which afforded due process and access to the courts. This second proposition of error is without merit.

---

**7.** In addition to publication in both the Official and West Annotated editions of the Oklahoma Statutes, the Rules are also now available on this Court's website (www.occa.state.ok.us).

In his third proposition, Petitioner claims trial counsel was ineffective for failing to challenge the wording of the Information; failing to adequately pursue a change of venue; allowing Petitioner to plead "blind" without a plea agreement; and failing to present adequate mitigating evidence in the sentencing hearing. We find the basis for this claim is waived. Petitioner admits direct appeal counsel raised as the basis for ineffective counsel the failure to adequately pursue a change of venue and advising Petitioner to plead "blind." We agree. *Braun*, 909 P.2d at 792–96. Accordingly, as the basis for that issue was raised on direct appeal, *res judicata* applies and this Court cannot address it. 22 O.S.Supp.1995, § 1089(C)(1).

Considering the remainder of the allegations which serve as the basis for the ineffective trial counsel claim: as we said in *Walker*, an ineffective assistance of trial counsel claim could not have been raised on direct appeal if it requires "factfinding outside the direct appeal record." *Id.* at 332 (quoting 22 O.S.Supp.1995, § 1089(D)(4)(b)(1)). "Stated in prohibitive terms, this Court may not review [Petitioner's] post-conviction claims of ineffective assistance of trial counsel if the facts generating those claims were available to [Petitioner's] direct appeal counsel and thus either *were* or *could have been* used in his direct appeal." *Id.* at 332. We made it clear that the mere absence of these claims from the direct appeal record was not sufficient: the claim would still be waived if "the facts contained in them were available to his direct appeal attorney and thus could have been argued on direct appeal." *Id.* at 332. Here, both issues were either contained in the record or could have been available to direct appeal counsel. Clearly here, the Information which he alleges is fatally defective was contained in the direct appeal record, and it is thereby waived. Concerning Petitioner's mental health history, he has pre-

sented nothing to this Court showing that additional evidence [8] in this field would have been unavailable to direct appeal counsel. Because the basis for this claim does not require factfinding outside the scope of information available to his attorney at the time of direct appeal, this claim is waived, and his third proposition of error is denied.[9]

For his fourth proposition of error, Petitioner alleges ineffective appellate counsel. He does not state in his proposition the specific facts which he claims merit relief on this basis, but a review of his petition shows the basis for the allegation lies primarily in challenging the Information and failing to adequately argue ineffective trial counsel.

In *Walker*, we set forth a three-prong test to review claims of ineffective appellate counsel.[10] Under this analysis, (1) the threshold inquiry is whether appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. If a petitioner establishes appellate counsel actually did the thing supporting the allegation of ineffectiveness, this Court then (2) determines whether the performance was deficient under the first of the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 677–78, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984). If this burden is met, (3) this Court then considers the mishandled substantive claim, asking whether the deficient performance supports a conclusion "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." *Walker* at 333 n. 25 (quoting 22 O.S.Supp.1995, § 1089(C)(2)).

Concerning the failure to argue the Information was fatally defective: under this analysis, the first threshold question is met, as the direct appeal record shows appellate counsel failed to raise this issue in a timely

---

8. At his sentencing hearing, Petitioner presented close to 100 transcript pages of psychological and pharmacological evidence from two experts in support of his claim he deserved mitigation.

9. Petitioner also requests time to amend his application on this and other propositions of error to provide evidentiary support. This request is discussed below.

10. I continue to maintain that the *Strickland* test in its entirety, i.e., both prongs of the test, is the appropriate vehicle with which to review claims of ineffective assistance of appellate counsel. *See Walker*, 933 P.2d at 341–44 (Lumpkin, J., Concurring in Result). However, I yield to the majority here based on *stare decisis*.

manner.[11] We therefore turn to the second requirement under the new Act: whether such performance was deficient under the first prong of the *Strickland* test.

The reason for focusing on the first prong of the *Strickland* test was also explained in *Walker*:

> Before the enactment of the new statute, post-conviction petitioners would simply argue their barred claims and conclude that their appellate counsel's decision not to raise them or manner of raising them constituted ineffective assistance under the two-pronged *Strickland* test. In applying the prejudice prong of the *Strickland* test to these allegations, this Court was essentially forced to examine the merits of the allegedly mishandled but technically waived claim in order to determine whether it "was so serious as to deprive the defendant of a fair trial." By eliminating a capital post-conviction petitioner's burden to prove prejudice for ineffective assistance of appellate counsel allegations, the pivotal and narrow threshold issue is now simply whether appellate counsel's ***performance*** was deficient under prevailing professional norms. This issue may be fully analyzed without examining the merits of the technically waived, substantive claim which was allegedly mishandled.

*Walker*, 933 P.2d at 334 (emphasis in original). In other words, this Court has announced its intention to focus primarily on the first prong of *Strickland:* whether "counsel's performance was deficient under prevailing professional norms." *Walker*, 933 P.2d at 334.

As this Court has traditionally applied the second prong of *Strickland* without regard to the first, *see* discussion in *Walker* at 333–35, we have not fully addressed all the variables inherent in the first prong. The circumstances of this case and this claim require us to address this prong in more depth than was done in *Walker*.[12]

*Walker* does provide some guidance. In discussing the question of effective trial counsel, *Walker* noted that such claims can be considered on post-conviction

> only if they are based upon facts which were not available to the applicant's direct appeal attorney and thus could not have been made part of the direct appeal record. Stated in prohibitive terms, *this Court may not review [Petitioner's] post-conviction claims of ineffective assistance of trial counsel if the facts generating those claims were available to [Petitioner's] direct appeal attorney and thus either **were** or **could have been** used in his direct appeal.*

*Id.* at 332 (emphasis added). *See also Id.* at 332 n. 18 ("Thus, in determining whether Walker's current trial counsel ineffective claims have been properly raised in this post-conviction application, we must ascertain whether the facts Walker now asserts to support those claims were *available* to his direct appeal attorney and thus *could have been* made part of the direct appeal record.").[13]

The language in *Walker* dealing with ineffective trial counsel bears a striking resem-

**11.** Appellate counsel filed an amended brief-in-chief (pursuant to this Court's Order) on August 12, 1994. On January 31, 1995, a request to file a supplemental proposition of error was submitted to the Court. The basis for that request was that the information was fatally defective. This Court denied the request on March 14, 1995. Therefore, appellate counsel did try to present the issue to this Court, but did not do so in a timely manner.

**12.** The opinion of my colleague in which he concurs in results objects to the use of federal case law in providing a consistent, reasoned method of applying the first prong of the *Strickland* test adopted in *Walker*. However, given that *Strickland* is itself federal case law which this Court has adopted, I do not think it is

unreasonable to turn to the same Court that created *Strickland* to determine how that Court has subsequently interpreted its own cases. I believe it is incumbent upon an appellate court to provide an analysis of how it will treat issues presented to it, rather than merely adopting an "I–know–it–when–I–see–it" approach. An enunciated procedure for analysis of an issue not only ensures consistency by this Court, but it also affords notice to litigants of what is required to raise viable issues before the Court.

**13.** *See also McGregor v. State*, 935 P.2d 332, 335 (Okl.Cr.1997) ("The category of items requiring fact-finding outside the direct appeal record does not include those items that trial counsel had the ability to discover.").

blance to the attitude of the United States Supreme Court concerning allegations of ineffective counsel presented on collateral review. That Court held it is not improper to bind a habeas petitioner to default by his counsel, absent extraordinary circumstances. *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 91, n. 14, 97 S.Ct. 2497, 2508, n. 14, 53 L.Ed.2d 594 (1977). To overcome such a default, a petitioner must show cause before his claim will be addressed on the merits. *Carrier*, 477 U.S. at 485, 106 S.Ct. at 2644.[14]

To establish cause for a default, a petitioner must present a reason to excuse the procedural default. Though · ineffective assistance of counsel may constitute cause, *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486–87, 106 S.Ct. at 2644. Rather, the existence of cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 488, 106 S.Ct. at 2645. Attorney errors are not external, "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991) (quoting *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645.) The Sixth Amendment imposes an exception to this rule, in that it forbids the state from making an accused defend himself without effective assistance of counsel. However, under the first prong of the *Strickland* test, a defendant must establish "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Under this standard, "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. The court must avoid the "distorting effects of hindsight," and the defendant must overcome the presumption that the attorney's action constituted sound trial strategy. *Id.*

■ In other words, incompetence of an attorney on direct appeal could constitute cause, *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645, *see also Coleman v. Thompson*, 501 U.S. at 752–54, 111 S.Ct. at 2566–67. However, the mere failure of direct appeal counsel to raise a claim does not, in and of itself, deprive a petitioner of "reasonably effective assistance" of counsel, *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, which would amount to constitutionally ineffective counsel on direct appeal, and therefore does not satisfy the cause requirement which would allow this Court to address the underlying claim. *See Routly v. Singletary*, 33 F.3d 1279, 1289–90 (11th Cir.1994). As one federal appeals court has phrased it, "[b]ecause law is not an exact science, an ordinary, reasonable lawyer may fail to recognize or to raise an issue, even when the issue is available, yet still provide constitutionally effective assistance." *Pelmer v. White*, 877 F.2d 1518, 1523 (11th Cir.1989). This Court has adhered to that same philosophy. *See Walker*, 933 P.2d at 336–37 ("Walker ... reasons that an attorney who omits arguably meritorious appellate claims is always ineffective. This is simply not the case, and such a conclusory allegation, standing alone, will never support a finding that an attorney's performance was deficient.").

---

**14.** The Court also enunciated a "prejudice" requirement in connection with this analysis. Under the "prejudice" requirement, the Supreme Court has observed a petitioner must show not merely that the errors at trial created a *possibility* of prejudice, "but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). This prong is therefore not satisfied if there is strong evidence of guilt and a lack of evidence to support the claim. *Id.* at 172, 102 S.Ct. at 1596. We mention this "prejudice" requirement here only because it is another segment of the Supreme Court's analysis. We need not discuss this prong at length here, or determine whether "prejudice" here is the same as the "prejudice" prong under *Strickland* which this Court has said it no longer follows in post-conviction review, as this case is resolved at the cause level.

Rather, unless a petitioner can show that some objective external factor prevented his attorney from raising issues on direct appeal, we will presume the omission on direct appeal was the result of "appellate counsel's studied decision not to raise the . . . issues on direct appeal" and was within the "broad range of professional conduct *Strickland* permits," *Whitmore v. Avery*, 26 F.3d 1426, 1429 (8th Cir.1994). Unless a petitioner presents a "substantial" reason to rebut this presumption, *see Rust v. Zent*, 17 F.3d 155, 160–61 (6th Cir.1994), a petitioner will not establish cause for the procedural default. *See Routly, supra; Roberts v. Singletary*, 29 F.3d 1474, 1478 (11th Cir.1994). Only if a petitioner establishes cause will this Court address whether the underlying claim would satisfy the third-prong "prejudice" portion of the test set forth in *Walker*.[15]

With these principles in mind, we now turn to Petitioner's claims of ineffective appellate counsel. Clearly, Petitioner's claim of ineffective appellate counsel must fail. In no instance has he shown to this Court that some objective factor external to the defense prevented his appellate attorney from raising the claims he now raises in his post-conviction application. Put another way, Petitioner has failed to show the claim he now asserts was not available to his direct appeal counsel, and as a result of that unavailability could not have been raised on direct appeal. Further, Petitioner has not provided a "substantial" reason rebutting the presumption his direct appeal counsel's decision not to raise

the issue was a "studied" one. Accordingly, he has failed to establish cause for the procedural default.

As Petitioner has failed to show his direct appeal attorney's performance was deficient under the first prong of the *Strickland* test, he has failed to establish ineffective counsel under this Court's test. Accordingly, his fourth proposition of error (ineffective appellate counsel) has no merit; and the underlying substantive claims which form the basis for the claim remain procedurally barred. *Walker*, 933 P.2d at 336–37.

For his fifth proposition of error, Petitioner contends the revised post-conviction scheme is constitutionally infirm. He claims the Act denies both equal protection and equal access to the courts and deprives him of due process; he also claims the Act violates the ex post-facto clause of both the United States and Oklahoma constitutions. This Court has recently considered and rejected such claims. *Mitchell v. State*, 934 P.2d 346, 348–50 (Okl.Cr.1997); *Walker*, 933 P.2d at 330–31; *Hatch v. State*, 924 P.2d 284, 291–92 (Okl.Cr.1996). This proposition is denied.

For his sixth proposition of error, Petitioner claims that because of funding problems within the Oklahoma Indigent Defense System, he was unable to obtain a competent psychologist to assist in the preparation of his application for post-conviction relief. As a result, he was deprived of effective post-conviction counsel "in violation of

---

**15.** This requirement to show cause is not as draconian as it appears at first blush. Despite the rigorous standard which must be met to satisfy these requirements, the Supreme Court, in interpreting federal habeas claims, has held a claim can still be heard if a petitioner can show his default is excused under the fundamental miscarriage of justice exception. This exception has been described as a "gateway" through which a petitioner must pass to have his otherwise barred claim considered on the merits. *See Herrera v. Collins*, 506 U.S. 390, 403–04, 113 S.Ct. 853, 862, 122 L.Ed.2d 203, 219 (1993). To fall within this exception, a petitioner almost always must make "a proper showing of actual innocence." *Id.* Indeed, our state statute has the same requirement. *See* 22 O.S.Supp.1995, § 1089(C)(2) (only issues which can be raised include issues which "support a conclusion . . . that the defendant is factually innocent. . . .").

To fall within this exception, a petitioner must show by "clear and convincing evidence" that, but for the alleged error, "no reasonable juror would have found the petitioner guilty of the crime of which he was convicted." *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir.1994). The "actual innocence" exception is applicable only to factual innocence, where a petitioner can make a colorable showing he is actually innocent of the crime for which he is convicted; is it not applicable to legal innocence. *See Smith v. Murray*, 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434, 446–47 (1986); *Selsor v. Kaiser*, 22 F.3d 1029, 1035 (10th Cir.1994); *Burger v. Zant*, 984 F.2d 1129, 1135 (11th Cir.1993); *Olsen v. McFaul*, 843 F.2d 918, 932–33 (6th Cir.1988). Here, as Petitioner pled nolo contendere to the charges, we can safely say Petitioner has failed to meet this burden.

the Sixth, Eighth and Fourteenth Amendments, *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and Oklahoma law."

We have previously determined that since there is no constitutional right under the United States Constitution to post-conviction counsel, there can be no Sixth Amendment claim of ineffective counsel. *Hatch,* 924 P.2d at 294–95. Consequently, this portion of his argument is *res judicata,* and this Court cannot address the issue again.

Petitioner has not explained how the Eighth or Fourteenth amendments guarantee him the right to post-conviction counsel, and we therefore do not address that. Concerning his citation to "Oklahoma law," Petitioner has not provided this Court with any authority other than that generally in support of his claim he is entitled to effective post-conviction counsel. Accordingly, he has failed to preserve this portion of his proposition by providing relevant authority to this Court, and this proposition is waived. *See* 22 O.S.Supp.1996, Ch. 18, App. *Rules of the Court of Criminal Appeals,* Rule 3.5(A) & (C). Concerning his citation to *Ake,* the holding in that case is very specific: "We hold that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor *at trial,* the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake,* 470 U.S. at 74, 105 S.Ct. at 1091–92 (emphasis added). Petitioner seems to admit as much in his brief, at 36 (quoting *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093, as saying: "*a criminal trial* is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense."). We have said post-conviction proceedings are not intended to be a second direct appeal; they certainly are not intended to be a second trial proceeding. We refuse to undermine that principle by extending *Ake* to post-conviction proceedings, ab-

sent more authority. Petitioner has not provided that authority.

Accordingly, Petitioner has waived consideration of the remaining portion of his sixth proposition.

In addition to the relief requested, Petitioner also requests this Court allow him to do a number of other things: (1) require the State to file a response to his Application, specifically admitting or denying the factual allegations of his Application; (2) permit him to file a reply brief to that response; (3) permit discovery pursuant to 12 O.S.1991, §§ 3224–3237[16]; (4) remand the case for an evidentiary hearing after such discovery; (5) permit him 90 days within which to supplement his Application with further affidavits; and (6) permit him to amend the Application at any time before judgment to include additional allegations not presently available.

There can be no question that this Court has the authority to require a response if such a response is necessary "to facilitate post-conviction review." 22 O.S.Supp.1995, § 1089(D)(3). In this case, no such order is necessary. Accordingly, Petitioner's request for a response from the State is denied. As a result, his request to file a reply brief is denied as moot. This Court has never allowed unfettered discovery in post-conviction proceedings, and the new Act does not broaden discovery rights. *Walker,* 933 P.2d at 339–41. Petitioner has failed to show this Court why additional discovery is necessary. Accordingly, his request for additional discovery is denied. His request for an evidentiary hearing is also denied, as he has failed to show by clear and convincing evidence that such a hearing has or is likely to have "support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." 22 O.S.Supp.1996, Ch. 18, App. *Rules of the Court of Criminal Appeals,* Rule 9.7(D)(5).

Petitioner's last two requests are also denied. The new Act specifically states that "[n]o application may be amended or supplemented after" the time restrictions set forth in the act, and that any amended or supple-

---

**16.** Petitioner lists statutory authority for this request as "12 O.S.Supp.1989, §§ 3224–3." We find no such provisions. The citation to Title 12 refers to discovery in civil cases. The Oklahoma Criminal Discovery code is found at 22 O.S.Supp.1994, § 2001 et seq.

mental application filed after the time set forth in the Act "shall be treated" by this Court "as a subsequent application." 22 O.S.Supp.1995, § 1089(D)(2).

## DECISION

After carefully reviewing Petitioner's Application for post-conviction relief and his requests for discovery, evidentiary hearing and other requests, we conclude (1) there exists no controverted, previously unresolved factual issues material to the legality of Petitioner's confinement; (2) Petitioner could have previously raised collaterally asserted grounds for review; (3) grounds for review which are properly presented have no merit; and (4) the current post-conviction statutes warrant no relief. 22 O.S.Supp.1995, § 1089(D)(4)(a)(1), (2) & (3). Accordingly, Petitioner's Application for Post–Conviction Relief and Application for an Evidentiary Hearing and Discovery are **DENIED.**

LANE, J., concurs.

CHAPEL, P.J., STRUBHAR, V.P.J., and JOHNSON, J., concur in results.

CHAPEL, Presiding Judge, concurring in result:

I concur in the denial of Braun's Application, but I believe the opinion engages in needless discussion. The lengthy analysis of the principle of access to the courts in Proposition II is unnecessary. Braun complains because we denied his request to supplement his appellate brief with a proposition relating to sufficiency of the Information, while we granted similar requests in two other cases. Braun's underlying claim relies on dicta in *Pickens v. State*[1] and his argument does not support the conclusion that the outcome of the direct appeal would have been different. Consequently I would simply deny relief.

I also disagree with the analysis of ineffective assistance of counsel in Proposition IV. The opinion describes the *Walker v. State*[2] three-tiered procedure for analyzing claims of ineffective assistance of appellate counsel, then wanders into a discussion of federal habeas corpus law which is both inappropriate and unnecessary under *Walker*. We do not need to explicitly or by analogy rest our interpretation of the revised post-conviction statutes on federal case law. Based on the analogy to federal law, the opinion concludes that Braun fails to show his claims were unavailable to direct appeal counsel, and further fails to provide a "substantial" reason rebutting the majority's presumption that appellate counsel's decision not to raise certain issues was "studied". None of this conforms to *Walker*. Applying the *Walker* test, I first note that the conduct Braun claims was deficient actually occurred. However, he merely provides 1) a laundry list of supposedly meritorious claims which appellate counsel failed to raise; 2) counsel's affidavit claiming none of these failures were strategic decisions; and 3) an affidavit stating a reviewing attorney believes appellate counsel's decisions to have been ineffective. Taken as a whole this material does not set forth facts and law establishing that appellate counsel's performance was deficient, and I would deny the claim.

Finally, the discussion of Proposition VI states that "since there is no constitutional right under the United States Constitution to post-conviction counsel, there can be no Sixth Amendment claim of ineffective counsel." State law entitles Braun to counsel in post-conviction proceedings and, if he is entitled to counsel, he must be entitled to effective counsel. Otherwise this right to counsel makes no sense. I would review the claim and deny relief.

I am authorized to state that Strubhar, V.P.J., and Johnson, J., join in this opinion.

---

1. 885 P.2d 678, 683–84 (Okl.Cr.1994). Our decision reversing *Pickens* did not rest on the lack of "malice aforethought" in the Information, and remarks regarding that language are dicta. *Charm v. State,* 924 P.2d 754 (Okl.Cr.1996).

2. 933 P.2d 327 (Okl.Cr.1997).